IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2014

**STATE OF TENNESSEE v. QUINCY MAURICE DEAL**

**Appeal from the Criminal Court for Davidson County**
**Nos. 2011-D-2994, 2013-A-402, 2013-A-403      Steve R. Dozier, Judge**

───────────────

**No. M2013-02315-CCA-R3-CD - Filed October 9, 2014**

───────────────

The defendant, Quincy Maurice Deal, pled guilty, in three different cases, to two counts of aggravated robbery, Class B felonies; aggravated kidnapping, a Class B felony; possession of cocaine in a school zone with intent to sell or deliver, a Class B felony; and felon in possession of a weapon, a Class E felony. The trial court sentenced the defendant to an effective term of fourteen years, to be served consecutively to his sentences in previous convictions for which he was on probation. On appeal, the defendant argues that the trial court imposed an excessive sentence. After review, we affirm the sentences imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and NORMA MCGEE OGLE, J., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Quincy Maurice Deal.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On August 9, 2013, the defendant entered guilty pleas to charges in three different cases. In case number 2011-D-2994, the defendant pled guilty to aggravated robbery and aggravated kidnapping for offenses that occurred on June 8, 2011. In case number 2013-A-402, the defendant pled guilty to aggravated robbery for an offense that occurred on June 14,

2011. In case number 2013-A-403, the defendant pled guilty to possession of cocaine in a school zone with intent to sell or deliver and felon in possession of a weapon for offenses that occurred on June 23, 2011. Per the terms of the plea agreement, the defendant received a twelve-year sentence at 100% on the drug conviction and a four-year sentence at 35% on the weapon conviction, with the sentences in the defendant's other convictions to be determined by the trial court after a sentencing hearing. The plea also provided that the sentences in the instant offenses run concurrently but that the court would determine whether those sentences would run concurrently or consecutively to the defendant's previous convictions for which he was on probation. All remaining charges against the defendant were dismissed.

At the plea hearing, the State provided a detailed recitation of the proof against the defendant had the cases gone to trial. The proof would have established that the defendant engaged in a kidnapping and several armed robberies, including one where shots were fired at a victim who had escaped from a moving car. When the defendant was later arrested at his home, which was within 1000 feet of a school, he was armed and in possession of five grams of cocaine.

The trial court conducted a sentencing hearing, at which Thurman Mobley, the defendant's grandfather, was the first to testify. Mobley stated that the defendant's parents were in the military when he was younger, and the defendant often stayed with him in Union City. The defendant also had two brothers who were in the military. Mobley acknowledged that the defendant had been in a lot of trouble in the last few years but said that he supported him. Mobley admitted that the defendant was not staying with him at the time of the crimes in question, and he was not familiar with the defendant's tattoos. The defendant never spoke with Mobley about his crimes or drug use. Mobley agreed that the defendant could read and write and was intelligent.

Terri Hall, the defendant's aunt, testified that she lived in Memphis. She said that she had "quite a bit" of contact with the defendant when he was growing up, but not so much in his later teenage years. She recalled that, when the defendant's parents divorced, the defendant went to live with his father, who was more lenient, and the defendant became more disrespectful. She noted that the defendant started to get into trouble around the age of fourteen. Hall pointed out many of the defendant's relatives who came to his hearing to support him. Hall said that the defendant did not graduate from high school but obtained his GED on his own accord while in prison. Hall admitted that the defendant had never spoken to her about his crimes and that she was not familiar with the meaning of the defendant's tattoos.

Jennifer Harris, another aunt of the defendant, testified that she saw the defendant often when he was younger. She said that the defendant was "very bright" and that their family valued education. She assumed early on that the defendant would go to college, but his attitude and demeanor changed when his parents divorced around the age of fourteen. Harris stated that the defendant's behavior was "not indicative of what we expect o[f] anybody in our family has done. And while we don't condone his behavior, we love and support him."

The defendant testified that he was a member of the Gangster Disciples from the age of fourteen until he was sixteen when the gang "turned their back on [him]" and he stopped associating with the gang. He said that, since he had been incarcerated, he only had two minor disciplinary write-ups and those did not involve violence. He obtained his GED on his own accord while in custody and had taken other classes to try and better himself. He said that he accepted responsibility and was sorry for his crimes.

On cross-examination, the defendant admitted that his juvenile criminal history involved robbing a complete stranger in 2009, for which he was afforded probation. He turned eighteen and, six months after the aforementioned robbery, he committed an aggravated burglary. A couple of weeks after the burglary, he attempted to rob another man, whom he shot when he failed to cooperate. That victim lost a kidney. The defendant acknowledged that he "luck[ed] out" and got twelve years of probation for those crimes. He admitted that he continued to use Ecstasy even after being afforded probation. He also admitted selling Ecstasy but said that he did not sell cocaine, even though it was found in his home when he was arrested and he pled guilty to the charge. The defendant acknowledged that he was in possession of a gun when he was arrested. He agreed that he had a supportive family and instead chose to lead a life of crime and violence. He admitted getting tattoos when he was seventeen years old that depicted bullets with the names of gang members written on them, as well as another that said "problem child."

The defendant's mother also submitted a letter to the court in which she asked for leniency on the defendant. She stated that the defendant had a "vast support network" that would support the defendant's "endeavors to be a productive law-abiding citizen." She said that the defendant was "extremely remorseful and ashamed of his actions."

After the conclusion of the hearing, the trial court entered a detailed, written order imposing the defendant's sentences. The trial court enhanced the defendant's sentences based on a determination that the defendant had a previous history of convictions or criminal behavior in addition to those necessary to establish his range and was on probation at the time he committed the present offenses. See Tenn. Code Ann. § 40-35-114(1), (13). The court noted that the defendant had previously been convicted of aggravated burglary, attempted

especially aggravated robbery, and aggravated robbery and had admitted using Ecstasy daily and selling drugs. The trial court found that no mitigating factors were applicable. Accordingly, in addition to the previously imposed sentences on the drug and weapon convictions, the court imposed sentences of fourteen years at 100% on the aggravated kidnapping conviction and fourteen years at 85% on the two aggravated robbery convictions. Per the terms of the plea agreement, those sentences were ordered to run concurrently for an effective term of fourteen years. However, the court determined that the fourteen-year sentence would be served consecutively to the sentences in cases numbers 2010-B-895 and 2010-B-1183, the convictions for which he was on probation when he committed the present offenses. The court imposed consecutive sentences based on a finding that the defendant was an offender whose record of criminal activity was extensive and that he was sentenced for an offense committed while on probation. See Tenn. Code Ann. § 40-35-115(b)(2), (6).

The defendant appealed, arguing that the trial court imposed an excessive sentence.

## ANALYSIS

The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

Generally, challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. Bise, 380 S.W.3d at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id.

Additionally, the trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in the Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is an offender whose record of criminal activity is extensive, or that the defendant is sentenced for an offense committed while on probation. Id. § 40-35-115(b)(2), (6). As to consecutive sentencing, our standard of review is abuse of discretion with a presumption of reasonableness. State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013).

The defendant argues that he should have been sentenced to the minimum term of twelve years for his aggravated robbery and aggravated kidnapping convictions. He asserts that the trial court did not consider the relevant sentencing principles and evidence, particularly his potential for rehabilitation or treatment as evidenced by his young age and expression of remorse. However, the record shows that the trial court explicitly stated its consideration of all required factors in its written order, and the court was clearly aware of the defendant's age and previous opportunities to rehabilitate himself. In sum, as detailed above, the record reflects that the trial court imposed the fourteen-year-sentences after proper consideration of the purposes and principles of our sentencing act and consideration of proposed enhancement and mitigating factors. See Bise, 380 S.W.3d at 706. We conclude, therefore, that the trial court did not abuse its discretion in sentencing the defendant to fourteen years on his aggravated robbery and aggravated kidnapping convictions.

The defendant also argues that the imposition of consecutive sentences was in error because all seven of the criteria listed in Tennessee Code Annotated section 40-35-115(b) were not present. However, this assertion is without merit as the criteria in section 40-35-115(b) are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. In this case, as set out above, the court imposed consecutive sentences based on a finding that the defendant was an offender whose record of criminal activity was extensive and that the defendant was sentenced for an offense committed while on probation. See Tenn. Code Ann. § 40-35-115(b)(2), (6). The court specifically stated that "the defendant has an extensive criminal record even though he is only twenty-one years old. Further, the [c]ourt finds the defendant was on probation for violent offenses, which included shooting a victim during a robbery, at the time he committed these crimes." It is undisputed that the defendant has a lengthy criminal history despite his young age and that he was on probation when he committed the present offenses. The trial court did not abuse its discretion in imposing consecutive sentences.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the sentences imposed by the trial court.

_____
ALAN E. GLENN, JUDGE